UNITED STATES DISTRICT COURT
NORTHERN DISTRICT
EASTERN DIVI | 1:16-cv-06607
Judge John Robert Blakey
Magistrate Judge Mary M. Rowland

FEDERAL TRADE COMMISSION, and

OFFICE OF THE ATTORNEY GENERAL,
STATE OF FLORIDA, DEPARTMENT OF
LEGAL AFFAIRS,

    Plaintiffs,

    v.

BIG DOG SOLUTIONS LLC, also d/b/a Help Desk
National and Help Desk Global, a Florida limited
liability company, *et al.*,

    Defendants.

[FILED UNDER SEAL]



**FILED**

JUN 2 4 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

---

### DECLARATION AND CERTIFICATION OF PLAINTIFF FEDERAL TRADE COMMISSION'S COUNSEL PURSUANT TO FED. R. CIV. P. 65(b) AND L.R. 5.5(d) IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION TO SEAL FILE TEMPORARILY

I, James Davis, hereby declare as follows:

 1. I am an attorney in the Midwest Regional Office of the Federal Trade

Commission ("Commission" or "FTC"). I represent the FTC in this matter. I am licensed to

practice law in the State of Illinois. My business address is 55 West Monroe Street, Suite 1825,

Chicago, Illinois 60603. The following facts are known to me either personally or upon

information and belief, and if I were called as a witness, I could competently testify to them.

 2. Plaintiffs, FTC and State of Florida, have not attempted to notify Defendants of

Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order with Asset Freeze, Appointment of

a Receiver, Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction

Should Not Issue ("TRO Motion"). Such notice should not be given, for the reasons set forth

below.

3.      The evidence set forth in Plaintiffs' memorandum in support of the TRO Motion, and the accompanying exhibits, which I have personally reviewed, show that Defendants have engaged, and are likely to continue to engage, in a scheme to deprive consumers of at least 8 million dollars through fraud and deception.

4.      The evidence shows that, for the past eighteen months, Defendants have deceived consumers into purchasing their tech support products and services.  Defendants have misrepresented to thousands of consumers that they are part of or certified by Microsoft or Apple to service consumers' computers and have made bogus diagnoses of purported performance or security problems on those computers, all in order to charge consumers hundreds of dollars apiece for their software and tech support services.  Defendants initially rope in consumers through a series of deceptive online pop-ups and "chatbots" that appear on consumers' computers through their web browsers.  The pop-ups and chatbots disable consumers' web browsers and alert them that their computers may be infected with viruses or malware or otherwise compromised.  The alerts instruct consumers to immediately call a toll-free number belonging to Defendants.  Consumers who call Defendants' number reach telemarketers who double down on these misrepresentations.  These telemarketers remotely access consumers' computers and invariably purport to diagnose a series of problems in those computers, regardless of the actual state of the computer.  They bolster these diagnoses by again claiming to be part of or authorized by Apple or Microsoft.  They then proceed to sell consumers software at inflated prices and exorbitant repair services.  Through these practices, Defendants have violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Telemarketing Sales Rule, 16 C.F.R. Part 310, and Section 501.204 of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204.

2

5.      After processing victimized consumers' payments, Defendants transfer those funds to bank accounts located in Canada, where four of the twelve Defendants reside. As explained further in the FTC's TRO Motion and supporting materials, the pervasive, systematic fraud perpetrated by Defendants, the personal responsibility of the principals for that fraud, and the location of certain assets in the United States which Defendants may transfer out of the country, all provide motivation and opportunity for asset dissipation and destruction of records if they receive advance notice of the TRO Motion and proposed Temporary Restraining Order ("TRO").

6.      There is good cause to believe that immediate and irreparable damage to the Court's ability to achieve effective final relief for consumers in the form of monetary redress will occur from the sale, transfer, concealment, or other disposition by Defendants of their assets if they are notified of the TRO Motion prior to a hearing thereon.

7.      Moreover, the following examples, provided upon information and belief, illustrate the FTC's experience that defendants who receive notice of the FTC's intent to file or filing of an action alleging consumer fraud have immediately taken steps to dissipate or conceal assets, and/or destroy documents:

        a.      In *FTC v. E.M.A. Nationwide, Inc.*, No. 1:12-cv-02394 (N.D. Ohio 2012), the FTC filed for an *ex parte* TRO and corporate asset freeze, but the Court required that notice be given to the defendants. Within a week of obtaining notice, the defendants had withdrawn more than $152,000 from a corporate bank account.

        b.      In *FTC v. Prime Legal Plans*, No. 12-61872 (S.D. Fla. 2012), the FTC obtained an *ex parte* TRO with asset freeze and appointment of a receiver. Within hours of

learning of the action, the defendants moved approximately $2 million to bank accounts belonging to several non-party individuals, at least $200,000 of which was never recovered.

        c.     In *FTC v. Transcontinental Warranty, Inc.*, No. 09-cv-2927 (N.D. Ill. 2009) (Grady, J.), the FTC did not seek *ex parte* relief or to have the file sealed. Although the court granted the FTC's motion for a Temporary Restraining Order ("TRO") freezing all of the defendants' assets and appointing a receiver over the corporate defendant, by the time the receiver and counsel for the FTC arrived at the corporate defendant's premises pursuant to the Court order, hundreds of file folders with labels indicating that they contained records of the defendants' most recent transactions were found empty, five computers (including that of the corporate defendant's chief financial officer) were allegedly stolen the night before the receiver and FTC arrived, and various third-party trade debtors of the defendants froze payments due to the corporate defendant, which resulted in extensive litigation involving the receiver and ultimately cost the receivership estate hundreds of thousands of dollars.

        d.     In *FTC v. Global Marketing Group, Inc.*, No. 06 CV 2272 (M.D. Fla. 2006), the FTC obtained an *ex parte* TRO with an asset freeze and served the order on banks where the defendants were known or suspected to have accounts. After being served with the TRO, one defendant successfully withdrew over $500,000 from accounts previously unknown to the FTC. Most of these funds were wired to offshore bank accounts. The defendant was ultimately held in contempt and fled the country after failing to appear at a show cause hearing.

        e.     In *FTC v. Dennis Connelly*, SACV06-701 DOC (C.D. Cal. 2006), the FTC requested an *ex parte* TRO and asset freeze against all defendants. The court declined to issue an asset freeze against two of the three individual defendants and issued an order to show cause why an asset freeze should not issue as to them. The defendant whose assets were frozen and one of

the other defendants then withdrew amounts totaling close to $750,000 from a joint account within 24 hours. The judge subsequently extended the asset freeze over all defendants. Although some of the funds were recovered, more than $300,000 was not recovered.

f.   In *FTC v. 4049705 Canada Inc.*, No. 04 C 4694 (N.D. Ill. 2004) (Kennelly, J.), Canadian authorities executed a search warrant on the business premises of Canadian defendants. The FTC subsequently filed its complaint and its motion for a temporary restraining order with asset freeze, and provided notice to the defendants. The FTC subsequently discovered only through its own investigation that the defendants had made several transfers totaling approximately $70,000 after receiving notice of the FTC's action but before the asset freeze was imposed. The FTC was unable to recover the $70,000. The individual defendant was later held in contempt for transferring real estate in violation of the court-imposed asset freeze.

g.   In *FTC v. Unicyber Technology, Inc.*, No. CV04-1569 LGB (C.D. Cal. 2004), the FTC obtained an *ex parte* TRO with asset freeze and appointment of a receiver. Shortly after the defendant was served with the TRO, he called his wife, who, at his direction, violated the asset freeze by transferring $405,000 of corporate funds to her father. With the assistance of the receiver, the FTC was able to recover these funds.

h.   In *FTC v. National Consumer Council*, No. SACV04-0474 CJC (C.D. Cal. 2004), the FTC obtained an *ex parte* TRO with asset freeze and prohibition against destruction of business records against all of the defendants, and the appointment of a temporary receiver over all but one of the corporate defendants. One individual defendant deleted electronic files on the defendants' shared network server by accessing his account through a computer under the control of the corporate defendant not under the receivership. The files were never recovered.

5

i.     In *FTC v. QT, Inc.*, No. 03-cv-C 3578 (N.D. Ill. 2003) (St. Eve, J.), the

FTC obtained an *ex parte* TRO with asset freeze and when served with the TRO the defendants

immediately violated the Order by withdrawing and transferring substantial sums of money from

several bank accounts, totaling more than $2 million in one day.

j.     In *FTC v. Bay Area Business Council, Inc.*, No. 02-cv-5762 (N.D. Ill.

2002), as soon as the Court entered a final order for more than $12 million, the defendants took

advantage of the termination of a nearly two-year-old asset freeze and immediately withdrew

nearly all of their assets from their accounts before the FTC was able to obtain a turnover order.

k.     In *FTC v. Hanson Publications, Inc.*, No. 1:02-cv-2205 (N.D. Ohio 2002),

Canadian defendants transferred $105,000 from a U.S. account to a Canadian account within two

days of receiving service of the TRO.  Because this violated the TRO, the Court later secured

return of this money, making its return a precondition to release of attorney fees.

l.     In *FTC v. Physicians Healthcare Development, Inc.*, No. CV02-2936

RMT (C.D. Cal. 2002), the FTC provided notice of filing an *ex parte* action to the individual

defendants.  The Court issued a TRO with asset freeze and prohibition against destruction of

records, and the defendants were served with the TRO the same day.  The next day when FTC

staff went to the defendants' offices to take control of the business records, they found that

business records, including computers, had been removed from the premises or shredded.

Witnesses advised FTC staff that, on the day of the hearing on the TRO, they observed

defendants' employees removing computers and other items from the business premises.  The

records that were removed were never recovered.

m.     In *FTC v. SkyBiz.com, Inc.*, No. 01-cv-396(K) (N.D. Okla. 2001), within

days of the service of the TRO with an asset freeze provision, one of the primary defendants

6

convinced an overseas trustee to withdraw $1 million from the offshore account of a foreign affiliate. Because a domestic correspondent bank had been served with the TRO, it refused to transfer the funds. The money in the offshore account was preserved, and ultimately used to provide $20 million for consumer redress.

n.     In a case filed by the United States Securities and Exchange Commission, *SEC v. Dowdell*, No. 3:01CV00116 (W.D. Va. 2001), one or more of the defendants, after learning of the lawsuit, but prior to execution of service on the defendants, withdrew more than $850,000 in assets from corporate accounts, and another defendant attempted to empty every bank account to which he had access. *See Dowdell v. U.S.*, No. 7:07CV00237, 2007 U.S. Dist. LEXIS 69598 (W.D. Va. Sept. 20, 2007).

o.     In *FTC v. Inetintl.Com, Inc.*, No. CV-98-2140 CAS (C.D. Cal. 1998), the FTC obtained an *ex parte* TRO with an asset freeze and served the order on banks where the defendants were known or suspected to have accounts. While the person who was serving the TRO for the FTC was at one of the banks and speaking to a branch manager about the TRO, one of the defendants came into the bank, after having been served with the TRO, and attempted to withdraw money from his account there. He was unsuccessful.

p.     In *FTC v. Equifin International, Inc.*, No. CV-97-4526 DT, 1997 U.S. Dist. LEXIS 10288 (C.D. Cal. 1997), after an *ex parte* TRO was entered against the corporate defendants and their owner, and after the order was served on the corporate defendants but not on the individual, the individual directed an affiliate to withdraw bank funds from an account containing proceeds from the scam. Upon demand of the court-appointed receiver, the defendant ultimately returned the withdrawn funds.

7

q.  In *FTC v. Intellicom Services, Inc.*, No. CV-97-4572 TJH (C.D. Cal. 1997), the FTC obtained an *ex parte* TRO with an asset freeze, which it then served on banks at which the defendants were known to have accounts.  One defendant, whose bank was served earlier in the day, called the bank and sought to wire approximately $100,000 from an account that was specifically designated in the TRO as frozen.  The branch manager encountered a red flag in the system, discovered the account had been frozen, and refused to release the funds.

r.  In *FTC v. Thomas E. O'Day*, No. 94-1108-CIV-ORL-22 (M.D. Fla. 1994), the district court denied the FTC's request to issue a TRO with asset freeze *ex parte* and instead scheduled a hearing, with notice to the defendants, on the relief sought.  Several days later, the Federal Bureau of Investigation executed a search warrant on the defendants' business premises at the same time the FTC served notice of its action and of the scheduled hearing.  Within hours, an individual defendant withdrew approximately $200,000 from one of his bank accounts.

s.  In *FTC v. United Consumer Services*, No. 94-CV-3164-CAM (N.D. Ga. 1994), the FTC attempted to serve a TRO with asset freeze upon a defendant who was traveling on business.  When the defendant's lawyer notified his client of the order, the defendant went directly to his bank and removed $100,000 from a corporate bank account.  The FTC learned of the withdrawal only after receiving the account statements from the bank.  After being served with an order to show cause why the defendant should not be held in contempt for violating the asset freeze, the defendant finally produced the money at a deposition.

8.  In addition, reporters sometimes check U.S. District Court filings for matters of interest.  If the file in this matter is not sealed, the fact that Plaintiff has filed this suit may come to the attention of, and be published in, a newspaper, and Defendants may learn of the issuance of the requested TRO before they have been served.

8

9.      In the FTC's experience, new case filings also may come to the attention of a docket monitoring service.  In *FTC v. Wazzu Corp.*, SACV99-762 AHS (Anx) (S.D. Cal. 1999), when FTC staff arrived at the defendants' business premises to serve the TRO, the defendants said that they had previously learned from a monitoring service to which their attorney subscribed that the FTC had filed a case against them.  This was later confirmed by speaking to the employee of the monitoring service who had discovered the FTC's lawsuit.  The monitoring service would not have learned of the FTC's action at the time of filing if that case had been temporarily sealed.

10.      As noted above, the risk that Defendants will conceal or dissipate assets or destroy or conceal evidence if given notice of a TRO is extremely high.  Accordingly, Plaintiffs respectfully submit that it is in the interest of justice and the public interest that Plaintiffs' *ex parte* motion for a TRO be heard without notice to Defendants and that the file in this matter be sealed temporarily.

11.      Plaintiffs have not made a previous application for similar relief in this matter.


I declare, under penalty of perjury, that the foregoing statement is true and correct.


Executed on June 24, 2016

_____
James Davis
FTC Staff Attorney
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 [Telephone]
(312) 960-5600 [Facsimile]

9